UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| DISEAN GRAHAM, | : | Case No. 1:25-cv-464 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| | : | Magistrate Judge Karen L. Litkovitz |
| vs. | : | |
| | : | |
| C/O E. FELTY, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), has filed a pro se civil rights Complaint under 42 U.S.C. § 1983 against the following nine SOCF Defendants: Corrections Officers Felty, Cassidy, Stidham, and Ruggles; Institutional Inspector K. Parker; Lieutenants J. Kinner and Wellman; Captain Dunlap; and Warden C. Davis. (Doc. 1).[1] By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis*. (Doc. 4).

This matter is before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a Defendant

---

[1]Plaintiff attaches copies of various conduct reports to his Complaint. Pursuant to Federal Rule of Civil Procedure 10, these exhibits are considered a part of the Complaint "for all purposes." Fed. R. Civ. P. 10(c). *See Fishman v. Williams*, No. 14-cv-4823, 2016 WL 11484591, at *7 (C.D. Cal. Sept. 21, 2016) ("When screening a *pro se* plaintiff's complaint pursuant to 28 U.S.C. § 1915A, the Court may consider facts drawn from the complaint and supporting exhibits attached thereto."); *Johnson v. Buffalo Pub. Schools: Adult Educ. Div.*, No. 19-cv-1484, 2021 WL 9455714, at *3 (W.D.N.Y. Jan. 7, 2021) ("The Court deems the attachments and exhibits attached to [the plaintiff's] Complaint part of the pleading and considers them, to the extent they are relevant, in its screening decision."). However, the Court declines to comb through the exhibits to raise new claims or make legal arguments for Plaintiff. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("Furthermore, although this court has discretion to more broadly review the record on appeal, we, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it.").

who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). Also before the Court are Plaintiff's two motions for a temporary restraining order (TRO). (Docs. 7 & 8).

## LEGAL STANDARD

Because Plaintiff is a prisoner, and is proceeding *in forma pauperis*, the Court must dismiss the Complaint, or any part of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) & § 1915A(b). Complaints by pro se litigants are to be construed liberally and held to less stringent standards than those prepared by attorneys. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). But this leniency is not boundless, and "it is not within the purview of the district court to conjure up claims never presented." *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012).

In reviewing Plaintiff's Complaint at this stage, the Court must construe it in his favor, accept all well-pleaded factual allegations as true, and evaluate whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But the Court is not required to accept factual allegations that are "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429–30 (6th Cir. 2009). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although "detailed factual allegations" are not required, the Court must dismiss the Complaint "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 662 (internal quotation and quotation marks omitted). In the end, "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## THE COMPLAINT

Plaintiff alleges that between August 15, 2024 and August 28, 2024, he was housed in J2 restrictive housing. According to Plaintiff, when he moved into that cell, both he and Defendant Corrections Officer Felty noticed that there were food trays, flies, and "OC" mace on the walls, window, and bed frame, and that there was no mattress. Plaintiff asserts that he told Defendant Felty that he was not supposed to be placed in a suicide cell but Felty ignored him. Plaintiff further asserts that the toilet did not flush, but Felty told him there was nothing he could do about it. Plaintiff alleges that the toilet eventually filled up with urine and feces and that for three or four days he "slept, ate, and sat in a cell" with these conditions and with his complaints being ignored by Defendants Corrections Officer Cassidy, Lieutenant Kinner, Inspector Parker, and Captain Dunlap. Plaintiff also alleges that he was denied outdoor exercise, personal hygiene items, cleaning supplies, and a shower for thirteen days. Plaintiff states that, in addition to the above Defendants, he informed Defendant Warden Davis by sending her "kites" and asking the Deputy Warden to tell her about the conditions of his cell. (Doc. 1, at PageID 13).

Plaintiff alleges that on August 28, 2024, he was scheduled to move out of restrictive housing "on the first move." Plaintiff states, however, that the move would have placed him housing unit K2, which Plaintiff describes as "mainly used for [those with disciplinary convictions for] staff assaults and throwing feces and urine." Plaintiff asserts that he felt he was being retaliated against by being placed in that unit. After learning of his scheduled move to K2, Plaintiff allegedly stopped a mental health worker in the hallway and told him that he feared for his life and that if he was placed in K2 he would kill himself. Around this same time, Defendant Kinner allegedly taunted Plaintiff "with physical actions and verbal assaults" and gave Plaintiff a

3

false conduct report for violating Rule 2.1 (threatening bodily harm to another person) and Rule 5.2 (disobedience of a direct order). (*Id.* at PageID 14; 23).

Plaintiff alleges that as a result of the above circumstances he suffered a mental breakdown and attempted to harm himself. He attaches two conduct reports as exhibits to the Complaint stating that he engaged in self-harm behavior on August 28 and 29, 2024. It does not appear that Plaintiff was ever moved to K2. (*Id*. at PageID 14; 20; 22-23).

Plaintiff claims that he tried to file grievances about "all the previous violations of rules and procedures" but never received response. On September 5, 2024, Defendant Lieutenant Kinner searched Plaintiff's cell, apparently still in J2, and took his "ferguson [suicide] gown and blanket" because Plaintiff was no longer on constant watch. Plaintiff states that Defendant Kinner called for a bedroll but Plaintiff never received one and had to sleep without a mattress. Plaintiff claims that he went on a hunger strike around September 6 or 7, 2024, to bring attention to his situation. Soon thereafter, Plaintiff was apparently moved to housing unit D1. He states that Defendant Inspector Parker brought him four grievance forms on September 10, 2024, picked them up on September 16, 2024, but Plaintiff never received a response. Plaintiff feels that the alleged failure to respond to his grievances was another form of retaliation. (*Id*. at PageID 14-15; 21).

Plaintiff's Complaint then skips to the beginning of May 2025, when Plaintiff was apparently living in housing unit K4. Plaintiff alleges that Corrections Officer Lewis, who is not named as a defendant, grabbed an envelope from the "bars" of Plaintiff's cell and put it in the mail cart. Plaintiff alleges that he wrote grievances on May 4 and May 12, 2025, about the mishandling of his mail, but received inadequate responses. Plaintiff states that he later asked inmates in the K4 unit whether anyone had been given mail that was not theirs. Another inmate

4

allegedly responded that he had been given Plaintiff's mail by Defendant Corrections Officer Ruggles but had thrown it away. (Doc. 1, at PageID 16; 18).

Based on the above allegations, Plaintiff states that he is suing: (1) Defendant Corrections Officer Cassidy in his individual capacity for ignoring Plaintiff's conditions of confinement, (2) Defendant Captain Dunlap in his individual and official capacities for ignoring Plaintiff's conditions of confinement, (3) Defendant Warden Davis in her official capacity because "as the Warden how the prison is run is a reflection of her leadership," (4) Defendant Lieutenant Wellman because he oversees the mailroom, and (5) Defendant Corrections Officer Stidman because from August 15, 2024 to August 28, 2024 he was Defendant Cassidy's partner. (*Id*. at PageID 15-16). Liberally construing the Complaint, *see Martin*, 391 F.3d at 712, the Court also understands Plaintiff to be bringing the following additional claims against: (6) Defendant Corrections Officer Felty for ignoring his conditions of confinement, (7) Defendant Corrections Officer Kinner for ignoring his conditions of confinement, issuing false conduct reports, searching his cell, and taking his blanket, (8) Defendant Inspector Parker for ignoring his conditions of confinement and failing to respond to his grievances, and (9) Defendant Corrections Officer Ruggles for giving his legal mail to the wrong inmate. (*See id*.).

Plaintiff seeks monetary damages and injunctive relief. (*Id*. at PageID 12).

## ANALYSIS

Under relevant screening standards, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

### A.  Failure to State a Claim against Defendants Davis, Wellman, and Stidman

As an initial matter, Plaintiff's claims should be dismissed against Defendants Davis, Wellman, and Stidman. As for Warden Davis and Mailroom Supervisor Wellman, Plaintiff does

not allege any personal involvement on their part, and it is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See Wingo v. Tennessee Dept. of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)). In so far as Plaintiff alleges that he sent Warden Davis kites about his cell conditions and asked the Deputy Warden to inform her of those conditions, his claims fare no better. Prison officials whose only roles involved the alleged failure to act are not liable under § 1983. *Shehee v. Luttrell,* 199 F. 3d 295, 300 (6th Cir. 1999).

Similarly, Plaintiff fails to allege any personal involvement on the part of Defendant Stidman, Cassidy's partner. Plaintiff's claims against Defendant Stidman are therefore also subject to dismissal. *See Tolliver v. Noble*, No. 2:16-cv-1020, 2020 WL 4260950, at *3 (S.D. Ohio July 24, 2020), *report and recommendation adopted sub nom. Tolliver v. Nobel*, 2021 WL 210450 (S.D. Ohio Jan. 21, 2021) ("[P]laintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff's claims against Defendants Davis, Wellman, and Stidman should therefore be dismissed for failure to state a claim upon which relief can be granted.

### B. Failure to State An Eighth Amendment Claim[2]

---

[2] Plaintiff's Eighth Amendment claims are frivolous to the extent he seeks monetary relief based solely on allegations of mental stress. *See, e.g., Russell v. Mgmt. & Training Corp*., No. 3:16-cv-2200, 2018 WL 3159041, at *1 (N.D. Ohio June 28, 2018) ("[T]he Sixth Circuit repeatedly has held that Eighth Amendment claims for monetary relief based on mental or emotional injury are precluded absent a showing of physical injury.") (and cases cited

Plaintiff's claims against the remaining defendants should also be dismissed. Under the Eighth Amendment, prison officials must "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Nevertheless, "[t]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Instead, "extreme deprivations are required to make out a conditions-of-confinement claim . . . [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,'" *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

An Eighth Amendment conditions-of-confinement claim includes objective and subjective components. The objective component requires Plaintiff to show that the alleged harm was "objectively, sufficiently serious" and denied him "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citation omitted). That is, Plaintiff must allege and prove facts that establish an objectively intolerable risk of serious harm. *Id.* at 842, 846.

The subjective component of this claim requires proof that Defendants acted with "deliberate indifference" to a substantial risk to Plaintiff's health or safety. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This standard requires a "state of mind more blameworthy than

---

therein). Given that Plaintiff alleges a hunger strike and seeks injunctive relief in this action, however, the Court will consider his Eighth Amendment claims for the purposes of this screening even in the absence of any specific allegations of physical injury. *See, e.g., Odom v. Wilkinson*, No. 2:06cv0061, 2006 WL 1476194, at *2 (S.D. Ohio May 24, 2006) (examining the plaintiff's Eighth Amendment claims for injunctive and declaratory relief where plaintiff failed to allege physical injury) (citing *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1996) ("Clearly, *injunctive* relief may be ordered by the courts when necessary to remedy prison conditions fostering unconstitutional threats of harm to inmates.")).

7

negligence." *Farmer*, 511 U.S. at 835. The prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Finally, conditions-of-confinement claims "are highly fact-specific" and "the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204 (6th Cir. 2017). Therefore, the Court should "consider the interrelationship between the severe conditions and their duration" when evaluating the merits of a conditions-of-confinement claim. *Francis v. Altiere*, 491 F. App'x 539, 543 (6th Cir. 2012).

### 1. Unsanitary Conditions

The Sixth Circuit has recognized that the Eighth Amendment is not violated when prisoners are required to use non-flushable toilets on occasion. *See Knop v. Johnson,* 977 F.2d 996, 1013 (6th Cir. 1992); *Abdur–Reheem–X v. McGinnis,* 1999 WL 1045069, *2 (6th Cir. Nov. 12, 1999) ("the Eighth Amendment does not require that prisoners enjoy immediately available and flushable toilets"). Further, "[i]t is well-established that the presence of *some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." *Edge v. Mahlman*, No. 1:20-cv-892, 2021 WL 3725988 (S.D. Ohio Aug. 23, 2021). As such, requiring a prisoner to live in a cell with "massive amounts" of feces covering "nearly floor to ceiling" and to sleep in raw sewage violates the Eighth Amendment. *Taylor v. Riojas*, 592 U.S. 7, 7-8 (2020). On the other hand, temporary or minor inconveniences resulting from unsanitary conditions are unlikely to meet this standard. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Brown v. Mahlman*, No. 1:22-cv-239, 2022 WL 17817615 (S.D. Ohio

Dec. 19, 2022) ("Courts have typically found that temporary exposure to feces does not meet the objective component of the Eighth Amendment conditions of confinement test"); *Figueroa v. Cty. of Rockland*, No. 16-cv-6519, 2018 WL 3315735, *7 (S.D.N.Y. July 5, 2018) (allegations of feces and bodily fluids on the walls are insufficient to create a constitutional concern).

The cell conditions that Plaintiff alleges are unpleasant.  But under the above standards and in view of the relatively short length of time that Plaintiff was subjected to them (3 to 4 days with an unflushed toilet and 13 days in the cell), these conditions do not rise to the level of a plausible Eighth Amendment claim.

### 2. Denial of Outdoor Exercise

Nor does Plaintiff satisfy the objective component of the Eighth Amendment for his claim that he was denied outdoor exercise for 13 days.  As set forth above, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.  Plaintiff alleges that he was not permitted outdoor exercise for 13 days.  This is not the type of extreme deprivation that invokes the Eighth Amendment.  *See, e.g.*, *Hall v. Brazie*, No. 4:22-cv-2275, 2023 WL 2633531, at *3 (N.D. Ohio Mar. 24, 2023) (denial of outside recreation for 25 days did not violate the Eighth Amendment); *Griffin v. Coleman*, No. 3:17-cv-01051, 2019 WL 651601, at *3 (N.D. Ohio Feb. 15, 2019) (denial of outside recreation for 30 days did not violate the Eighth Amendment).

### 3. Denial of Showers and Hygiene Items

Plaintiff's allegations that he was denied a shower and personal hygiene items for 13 days likewise do not state a plausible constitutional claim.  Plaintiff does not allege that he suffered any physical injuries as a result, and "[c]ourts have not found the objective component [of an

9

Eighth Amendment claim] satisfied where the deprivation of hygiene items was temporary." *Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010). *See also Johnson v. Cool*, No. 1:22-CV-00031, 2024 WL 3992412, at *11 (S.D. Ohio Aug. 29, 2024), *report and recommendation adopted,* No. 1:22-CV-31, 2025 WL 360607(S.D. Ohio Jan. 31, 2025) (denial of a shower for 14 days did not violate the Constitution); *Griffin*, 2019 WL 651601, at *3 (denial of regular showers for 30 days did not violate the Constitution); *Fernandez v. Armstrong,* No. 3:02-cv-2252, 2005 WL 733664, at *5–6 (D. Conn. Mar.30, 2005) (denial of toothpaste, toothbrush, shampoo and soap for sixteen days did not violate the Constitution); *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) ("Deprivation of other toiletries for approximately two weeks—while perhaps uncomfortable—does not pose . . . an obvious risk to an inmate's health or safety[.]"); *Harris v. Fleming*, 839 F.2d 1232, 1234-36 (7th Cir. 1988) (denial of soap, toothpaste, and toothbrush for ten days did not violate the Constitution).

    **4.    Denial of Mattress**

Nor do Plaintiff's allegations that he was denied a mattress for 13 days rise to the level of a constitutional violation. *See Jones v. Toombs,* No. 95–1395, 1996 WL 67750, at *1 (6th Cir. Feb.15, 1996) ("The defendants did not violate [the plaintiff's] Eighth Amendment rights by depriving him of a mattress for a two week period.") (citing *Schroeder v. Kaplan,* No. 93–17123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995) (denial of mattress for four weeks did not violate the Constitution)).

Because none of the above conditions constitute objectively serious harms, Plaintiff cannot show that Defendants Cassidy, Dunlap, Felty, Kinner or Parker were deliberately indifferent to an excessive risk to his health and safety, and his Eighth Amendment claims should be dismissed for failure to state a claim upon which relief can be granted.

C. **Failure to State a First Amendment Claim for Retaliation and Denial of Grievances**

Plaintiff's allegations of retaliation also fail to state a plausible claim under the First Amendment. A prisoner seeking to establish a First Amendment retaliation claim must show that (1) he was engaged in protected conduct; (2) the defendant took an adverse action that was capable of deterring a person of "ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

Plaintiff asserts two retaliation claims. In the first claim, Plaintiff asserts that he felt retaliated against because of his scheduled move to K2, which Plaintiff viewed as an undesirable housing unit. (Doc. 1, at PageID 14). In the second claim, Plaintiff asserts that he felt retaliated against because his grievances regarding the conditions of his cell in J2 allegedly went unanswered. (*Id*. at PageID 15). Plaintiff, however, must allege more than his "personal belief that he [was] the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal quotation marks omitted). He has not done so here.

Considering his first retaliation claim, there are no allegations that any of the Defendants he complained to regarding the conditions of his cell in J2 were involved in the decision to move him to K2. Further, other than Plaintiff's conclusory assertions of retaliation, there are no factual allegations suggesting that his scheduled transfer to K2 was motivated by those complaints. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

Considering his second retaliation claim, § 1983 liability may not be imposed simply

11

because a Defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Plaintiff therefore cannot state a plausible claim against Defendant Parker for allegedly failing to respond to his grievances. Moreover, "[f]ailing to respond to a grievance in a timely manner (or at all), like denying a grievance, is not the type of adverse action that would deter a person of ordinary firmness from exercising his First Amendment rights." *Spurell v. Lazusky*, No. 4:25-cv-1510, 2025 WL 2977122, at *3 n.32 (M.D. Pa. Oct. 21, 2025) (citing cases).

Plaintiff's First Amendment retaliation and denial of grievance claims must be therefore dismissed for failure to state a claim upon which relief can be granted.

### D.  Failure to State a Fourth Amendment Claim

Nor has Plaintiff stated a plausible Fourth Amendment claim against Defendant Kinner relating to the search of his cell. An incarcerated person has no reasonable expectation of privacy in his prison cell. *See United States v. Carson*, 796 F. App'x 238, 249 (6th Cir. 2019) (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells.") and *United States v. Smith*, 526 F.3d 306, 309 (6th Cir. 2008) ("[I]nmates ... have no legitimate expectation of privacy from searches of their prison cells.")).

Plaintiff's Fourth Amendment claim against Defendant Kinner should therefore be dismissed.

### E.  Failure to State a Fourteenth Amendment Claim

Plaintiff's allegations also fail to state a plausible Fourteenth Amendment due process claim against Defendant Kinner for allegedly issuing a false conduct report or taking his suicide blanket. The Fourteenth Amendment's Due Process Clause protects persons against deprivations

12

of life, liberty, and property. *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). Prisoners, however, have narrower liberty interests than other citizens. *Grinter v. Knight,* 532 F.3d 567, 573 (6th Cir. 2008). Indeed, a prisoner has no constitutional right to be free from false accusations of misconduct. *Jackson v. Hamlin,* 61 F. App'x 131, 132 (6th Cir. 2003). A prison disciplinary action will not implicate a liberty interest requiring due process safeguards unless the punishment imposed will "inevitably" affect the duration of an inmate's sentence, such as a loss of good time credits, or will inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff's Complaint fails to allege that the challenged disciplinary conviction affected the length of his sentence or inflicted an atypical and significant hardship on him. "Confinement in administrative segregation 'is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.'" *Adkins v. Setzer*, No. 1:22-cv-276, 2022 WL 2712432, at *5 (W.D. Mich. July 13, 2022) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (superseded by statute on other grounds)). *See also Johnson v. Mohr*, No. 2:15-cv-86, 2015 WL 1526804, at *3 (S.D. Ohio Apr. 3, 2015) ("An inmate's eligibility for parole at a certain time under a discretionary parole system [like in Ohio] is not an 'atypical and significant hardship' and does not implicate a liberty interest.").

Similarly, to the extent Plaintiff seeks to assert a Fourteenth Amendment due process claim against Defendant Kinner for allegedly taking the blanket Plaintiff was issued while on constant watch, Plaintiff fails to allege facts establishing that its removal inflicted "an atypical and significant hardship" on him. *See Sandin*, 515 U.S. at 487. Although Plaintiff alleges that his request for a bedroll was not immediately fulfilled, Plaintiff does not allege that he was deprived of a blanket or a bedroll for any length of time. And, in fact, Plaintiff alleges that by September

13

10, 2024, he had been moved to a different housing unit (D1). *See, e.g., Ward v. Montana State Prison,* No. 06-cv-67, 2008 WL 564692, at *6 (D. Mont. Feb. 28, 2008) (denial of blanket for three days did not violate the Constitution); *Jones*, 1996 WL 67750, at *1 (denial of mattress for two weeks did not violate the Constitution).

Plaintiff's Fourteenth Amendment claims against Defendant Kinner should therefore be dismissed.

### F. Failure to State a First Amendment Mail Claim

Finally, the Court addresses Plaintiff's allegation that Defendant Ruggles interfered with his legal mail on one occasion by giving it to the wrong inmate. Because Plaintiff does not allege routine interference with his legal mail, Plaintiff fails to state a plausible constitutional claim. *See, e.g., Arnett v. Thomas*, No. 4:22-cv-13, 2022 WL 969626, at *2 (W.D. Ky. Mar. 30, 2022) (citing cases). Plaintiff's First Amendment mail claim against Defendant Ruggles should therefore be dismissed for failure to state a claim upon which relief can be granted.

### MOTIONS FOR TRO

Having considered the claims in his Complaint, the Court next considers Plaintiff's motions for a TRO. (Docs. 7; 8). Given the recommended dismissal of the Complaint for failure to state a claim upon which relief can be granted, the TRO motions should be denied as moot. *See Edelstein v. Flottman*, No. 24-3156, 2025 WL 609487, at *3 (6th Cir. Jan. 10, 2025) (affirming denial of TRO motions as moot following dismissal of complaint); *see also Johnson v. Shultz,* No. 5:22-cv-11273, 2023 WL 4477149, at *3 (E.D. Mich. July 11, 2023) ("Having dismissed Plaintiff's complaint, the Court denies Plaintiff's motion for TRO and motion for preliminary injunction as moot.").

Even if Plaintiff's Complaint was not subject to dismissal, which it is, his motions for TRO

14

would still require denial. In both motions, Plaintiff asserts interference with his electronic tablet, a claim beyond the scope of his Complaint. A motion for TRO is not the proper method for Plaintiff "to use in an attempt to address other issues unrelated to his original complaint." *Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 2635729, at *3 (S.D. Ohio June 12, 2013), *report and recommendation adopted*, 2013 WL 5944082, at *4 (S.D. Ohio Nov. 5, 2013).

Accordingly, in sum, the Complaint should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because Plaintiff has failed to state a claim upon which relief can be granted. In light of this recommendation, Plaintiff's motions for TRO (Docs. 7; 8) should be denied as moot.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Complaint (Doc. 1) be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

2. Plaintiff's motions for a TRO (Docs. 7; 8) be **DENIED as moot.**

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## PROCEDURES ON OBJECTIONS:

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ.

P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

December 29, 2025

Karen L. Litkovitz
UNITED STATES MAGISTRATE JUDGE